1
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK

2

3
------------------------------X
                              :

4
UNITED STATES OF AMERICA,   :
                             :  18-CR-00419 (BMC-4)

5
          v.              :
                             :  September 3, 2019

6
FENG LIANG, *et al.*,      :  Brooklyn, New York
                             :

7
              Defendants.  :
                             :

8
------------------------------X

9

10
        TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
      BEFORE THE HONORABLE CHERYL L. POLLAK
         UNITED STATES MAGISTRATE JUDGE

11

12
APPEARANCES:

13

14
For the Government:      UNITED STATES ATTORNEY
                      BY:  WILLIAM P. CAMPOS, ESQ.

15
                          ROBERT CAFTAL, ESQ.
                          JAMES S. YOON, ESQ.

16
                      ASSISTANT U.S. ATTORNEYS

17
For the Defendant:       ERIC P. FRANZ, ESQ.
                      CHRISTOPHER WRIGHT, ESQ.

18
                      Law Offices of Eric Franz PLLC
                      747 Third Avenue, 20th Floor

19
                      New York, NY 10017

20
Chinese Interpreter:    JOHN LAO

21

22
Court Transcriber:       MARY GRECO
                      TypeWrite Word Processing Service

23
                      211 N. Milton Road
                      Saratoga Springs, New York 12866

24

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

2

I N D E X

Defendant Sworn at Page 5

| EXHIBITS | Marked | Received |
|---|---|---|
| 1    Plea Agreement | -- | 14 |

3

1  (Proceedings began at 3:40 p.m.)

2          THE CLERK:  All rise.  This is the matter of <u>US v.</u>

3  <u>Liang</u>, 18-CR-419, Criminal Cause for Pleading.  Parties, please

4  state your appearances for the record.

5          MR. CAMPOS:  Good afternoon, Your Honor.  For the

6  United States William Campos, Robert Caftal who's a Special

7  Assistant United States Attorney, and James Yoon who is a trial

8  attorney with the Department of Justice's computer crime and

9  intellectual property section.

10          THE COURT:  All right.  Good afternoon.

11          MR. FRANZ:  Good afternoon, Your Honor.  Eric Franz

12  for Ms. Lin, and Mr. Christopher Wright who's been assisting me

13  on the matter, along with the Chinese interpreter.

14          THE COURT:  Good afternoon.  You may be seated.

15  Would the Chinese interpreter please raise your right hand,

16  please?

17  (AT THIS TIME THE INTERPRETER, JOHN LAO, WAS SWORN.)

18          THE COURT:  Just state your name, sir, for the

19  record.

20          THE INTERPRETER:  John Lao.

21          THE COURT:  All right.  Thank you.

22          All right.  Ms. Lin, we are using the services of an

23  interpreter to assist you in understanding these proceedings.

24  If at any point something is said that you don't understand,

25  please let me know.  Okay?

4

1          THE DEFENDANT:  Okay.

2          THE COURT:  Okay.  The first issue I want to deal

3    with is your consent to have me hear your plea.  You understand

4    that this is Judge Cogan's case and he is the United States

5    District Judge who will sentence you and who will make the

6    ultimate decision as to whether or not to accept your plea of

7    guilty.  If you wish, you have the absolute right to have Judge

8    Cogan hear your plea.  If you choose to do that, there will be

9    no prejudice to you.

10          On the other hand, if you wish, I will hear your plea

11   this afternoon and a transcript of these proceedings will be

12   made from the tape recording devices here in the courtroom, and

13   that transcript will be given to Judge Cogan to review at the

14   time of your sentence and when he makes his decision as to

15   whether or not to accept your plea of guilty.  Do you wish to

16   give up your right to have Judge Cogan hear your plea and

17   proceed instead before me this afternoon?

18          THE DEFENDANT:  Yes, I will give up.

19          THE COURT:  Okay.  Do you make this decision

20   voluntarily and of your own free will?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.  Has anyone made any threats or

23   promises to get you to agree to have me hear your plea?

24          THE DEFENDANT:  No.

25          THE COURT:  Okay.  My law clerk is going to show you

5

1  this consent form that I believe you may have signed earlier.

2  Have you seen this form before, Ms. Lin?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You can give it to her.  Have you

5  discussed it with your attorney?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Is that your signature there at the

8  bottom of the page?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Okay.  I'll note for the record that it's

11  been signed by counsel for the defendant, by the Assistant US

12  Attorney, and I'm endorsing it as well.

13          All right.  Now, Ms. Lin, before I can hear your

14  plea, there are a number of questions that I must ask you to

15  ensure that it is a valid plea.  Again, if you don't understand

16  any of my questions, just tell me and I will rephrase them.

17  Okay?

18          THE DEFENDANT:  Okay.

19          THE COURT:  Okay.  Would you raise your right hand,

20  please?

21  (AT THIS TIME THE DEFENDANT, JOSSTINA LIN, WAS SWORN.)

22          THE COURT:  Okay.  You can sit down.  You understand

23  that having been sworn, your answers to my questions will be

24  subject to the penalties of perjury or making a false statement

25  if you don't answer them truthfully.  Do you understand that?

6

1          THE DEFENDANT:  Yes.

2          THE COURT:  What is your full name?

3          THE DEFENDANT:  My name is Josstina Lin.

4          THE COURT:  How old are you?

5          THE DEFENDANT:  43.

6          THE COURT:  What education have you had?

7          THE DEFENDANT:  Junior high.

8          THE COURT:  Are you able to understand and speak any

9    English?

10          THE DEFENDANT:  Only a little bit.

11          THE COURT:  Okay.  Have you had any problems

12    communicating with Mr. Franz, your attorney?

13          THE DEFENDANT:  I communicated with him no problem.

14          THE COURT:  Counsel, have you had any problems

15    communicating with your client?

16          MR. FRANZ:  No, Your Honor, but we've used the

17    services of interpreters to do so.

18          THE COURT:  Okay.  Ms. Lin, are you presently or have

19    you recently been under the care of either a physician or a

20    psychiatrist?

21          THE DEFENDANT:  No.

22          THE COURT:  In the last 24 hours have you taken any

23    narcotic drugs?

24          THE DEFENDANT:  No.

25          THE COURT:  Any medicine or pills of any kind in the

7

1    last 24 hours?

2              THE DEFENDANT:  No.

3              THE COURT:  Have you had any alcohol to drink in the

4    last 24 hours?

5              THE DEFENDANT:  No.

6              THE COURT:  Have you ever been hospitalized or

7    treated for narcotics addiction?

8              THE DEFENDANT:  No.

9              THE COURT:  Have you ever been treated for any mental

10   or emotional problems?

11             THE DEFENDANT:  No.

12             THE COURT:  As you sit here before me today is your

13   mind clear?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Do you understand what we're doing here

16   today?

17             THE DEFENDANT:  I understand.

18             THE COURT:  Counsel, have you discussed the matter of

19   pleading guilty with your client?

20             MR. FRANZ:  I have, Your Honor.

21             THE COURT:  And in your view, does she understand the

22   rights that she will be waiving by pleading guilty?

23             MR. FRANZ:  She does, Your Honor.

24             THE COURT:  In your opinion, is she capable of

25   understanding the nature of these proceedings?

8

1          MR. FRANZ:  Yes.

2          THE COURT:  Do you have any doubt as to her

3  competence to plead at this time?

4          MR. FRANZ:  None whatsoever.

5          THE COURT:  Have you advised her of the maximum

6  sentence and fine that can be imposed as a result of her plea

7  here?

8          MR. FRANZ:  I have.

9          THE COURT:  Have you discussed with her the operation

10  of the sentencing guidelines in this case?

11          MR. FRANZ:  Yes.

12          THE COURT:  Now, Ms. Lin, first of all, I want to

13  make sure that you understand that you have the right to be

14  represented in connection with these charges by an attorney.

15  Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Mr. Franz, are you appointed in this

18  case?

19          MR. FRANZ:  No, Your Honor, I'm retained.

20          THE COURT:  Okay.  So Ms. Lin, if you could not

21  afford to pay for counsel, the Court would appoint an attorney

22  to represent you because you do have a right to be represented

23  by counsel from this point forward.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Now, do you believe that you've had

9

1   enough time to discuss your case with your attorney?

2           THE DEFENDANT:  Yes.

3           THE COURT:  And are you satisfied to have him

4   represent you?

5           THE DEFENDANT:  Yes, I am satisfied.

6           THE COURT:  Have you received a copy of the

7   indictment, the charges in this case?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Have you discussed the charges with your

10  attorney?

11          THE DEFENDANT:  Yes.

12          THE COURT:  Now, as I understand it, you seek to

13  plead guilty today to Count 1, 3, and 4.  Is that correct,

14  counsel?

15          MR. FRANZ:  Yes.

16          THE COURT:   Count 1 charges you with in or about and

17  between April 2011 and December 2016, both dates being

18  approximate and inclusive within the Eastern District of New

19  York and elsewhere you, together with others, did knowingly and

20  intentionally conspire to traffic in goods, specifically

21  handbags, wallets, belts, scarves, and other merchandise and to

22  use one or more counterfeit marks on and in connection with

23  those goods in violation of United States law.

24          THE DEFENDANT:  I understand.

25          THE COURT:  Okay.  Count 3 charges that in or about

1  and between February 2012 and June 2015, both dates being

2  approximate and inclusive within the Eastern District of New

3  York and elsewhere you, together with others, did knowingly and

4  intentionally conspire to conduct one or more financial

5  transactions in and affecting interstate commerce, specifically

6  the interstate transfer of money by money order which

7  transactions in fact involved the proceeds of specified

8  unlawful activity, trafficking in counterfeit goods, in

9  violation of United States law and that you did this knowing

10  that the property involved in the financial transactions

11  represented the proceeds of some form of unlawful activity and

12  that the financial transactions were designed in whole or in

13  part to disguise the nature, location, source, ownership and

14  control of the proceeds of specified unlawful activity all in

15  violation of United States law.  Do you understand what you've

16  been charged in?

17         THE DEFENDANT:  I understand.

18         THE COURT:  And Count 4 charges you with on or about

19  August 31, 2013 within the Eastern District of New York and

20  elsewhere you, together with others, did knowingly and

21  willfully and with intent to defraud the United States smuggle

22  and clandestinely introduce and attempt to smuggle and

23  clandestinely introduce into the United States merchandise,

24  specifically counterfeit Louis Vuitton handbags contained in

25  shipping container number KKFU7628722 which should have been

1  invoiced and make out and pass, and attempt to pass through the

2  Customs [indiscernible] one or more false, forged, and

3  fraudulent invoices and one or more other documents and papers

4  in violation of United States law.  Do you understand what

5  you've been charged with in Count 4?

6              THE DEFENDANT:  Yes.

7              THE COURT:  And I just want to make sure in Counts 1

8  and 3 you're charged with conspiracy.  Count 1 charges you with

9  the conspiracy to traffic in counterfeit goods and the other

10 count, Count 3, charges you with a money laundering conspiracy.

11 Do you understand what a conspiracy is?

12             THE DEFENDANT:  I do.

13             THE COURT:  Okay.  Basically it is simply an

14 agreement between one or more people to do something unlawful.

15 So you're charged in the first count, as I said, with agreeing

16 with others to traffic in goods.  And in Count 3, you're

17 charged with agreeing with others to launder money.  Do you

18 understand the charges?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Okay.  I want to make sure that you

21 understand the rights that you will be giving up if you decide

22 to plead not guilty to these charges.  Under the

23 constitution -- did I misstate that?  Let me state that again

24 because I think I got it backwards.  If you were to persist in

25 pleading not guilty, under the constitution and laws of the

12

1  United States, you would be entitled to a speedy and public

2  trial by jury with the assistance of counsel on the charges

3  contained in the indictment.  Do you understand that?

4           THE DEFENDANT:  I understand.

5           THE COURT:  At that trial, you would be presumed

6  innocent and the Government would have to overcome that

7  presumption and prove you guilty by competent evidence and

8  beyond a reasonable doubt.  You would not have to prove that

9  you were innocent.  If the Government were to fail, the jury

10 would have the duty to find you not guilty.  Do you understand

11 that?

12          THE DEFENDANT:  I understand.

13          THE COURT:  In the course of a trial, the witnesses

14 for the Government would have to come to court, they would have

15 to testify in your presence.  Your attorney would have the

16 right to cross examine those witnesses for the Government, to

17 object to any evidence offered by the Government, and to

18 subpoena witnesses and offer testimony and evidence on your

19 behalf.  Do you understand that?

20          THE DEFENDANT:  Yes.

21          THE COURT:  At the trial, while you would have the

22 right to testify if you chose to do so, you could not be forced

23 to testify.  Under the Constitution of the United States, a

24 defendant in a criminal case cannot be forced to take the

25 witness stand and say anything that could be used to show that

13

1  she is guilty of the crime with which she's been charged.  If

2  you were to decide not to testify, the Court would instruct the

3  jury that they could not hold that decision against you.  Do

4  you understand that?

5          THE DEFENDANT:  I understand.

6          THE COURT:  If you plead guilty, on the other hand,

7  I'm going to have to ask you certain questions about what it is

8  that you did in order to satisfy myself that you are in fact

9  guilty of the charge to which you seek to plead guilty.  You're

10 going to have to answer my questions and acknowledge your

11 guilt.  Thus, you will be giving up that right that I just

12 described, that is the right not to say anything that could be

13 used to show that you are guilty of the crime with which you

14 have been charged.  Do you understand that?

15         THE DEFENDANT:  I understand.

16         THE COURT:  If you plead guilty and I recommend to

17 Judge Cogan that he accept your plea, you will be giving up

18 your constitutional right to a trial and all of the other

19 rights that I have just described.  There will be no further

20 trial of any kind.  Judge Cogan will simply enter a judgment of

21 guilty based upon your guilty plea.  Do you understand that?

22         THE DEFENDANT:  I understand.

23         THE COURT:  Are you willing to give up your right to

24 a trial and the other rights that I have just described?

25         THE DEFENDANT:  Yes.

14

1          THE COURT:  Now, I understand there is a written Plea

2   Agreement in this case.  I'm marking it as Court Exhibit 1 for

3   purposes of these proceedings.  Lauren, would you give that to

4   her attorney, please?

5   (AT THIS TIME COURT EXHIBIT 1 MARKED)

6          THE COURT:  Ms. Lin, have you seen this before?

7          THE DEFENDANT:  Yes.

8          THE COURT:  And was it translated and read to you?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And have you discussed it with your

11   attorney?

12          THE DEFENDANT:  Yes.

13          THE COURT:  And is that your signature there on the

14   last page?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Does this agreement fully and accurately

17   reflect your understanding of the agreement that you have with

18   the Government?

19          THE DEFENDANT:  Yes.

20          THE COURT:  Other than the promises in the agreement,

21   has anyone made any other promise that has caused you to plead

22   guilty here?

23          MR. FRANZ:  Your Honor, I think she was distracted --

24          THE COURT:  Yes.

25          MR. FRANZ:  -- looking at a piece of paper.  Perhaps

15

1    you can repeat it.

2          THE COURT:  That's fine.  So my question was other

3    than the promises that are in the agreement, has anyone made

4    any other promise that has caused you to plead guilty here?

5          THE DEFENDANT:  No.

6          THE COURT:  Has anyone made any promise to you as to

7    what your sentence will be?

8          THE DEFENDANT:  No.

9          THE COURT:  Okay.  I'll take the agreement back.  Mr.

10   Franz, I noted that it wasn't signed by the translator.

11         MR. FRANZ:  Yes, Your Honor, because there were

12   different incarnations of the agreement.  I had a prior version

13   of the agreement translated into her native language for her

14   and reviewed it with the interpreters in my office.  The only

15   change to the agreement from the prior iteration was gone over

16   with her today with an interpreter in this courthouse but it

17   was not this interpreter.

18         THE COURT:  Okay.

19         MR. FRANZ:  But I can represent to the Court that not

20   only did I engage someone to transcribe an almost identical

21   agreement, but also had it read and translated by a court

22   authorized interpreter.

23         THE COURT:  Okay.  All right.  Is that satisfactory

24   to the Government?

25         MR. CAMPOS:  Yes, Your Honor.

16

1        THE COURT:  Okay.  All right.  So Ms. Lin, I want to

2   discuss the sentencing scheme that applies here.  The statute

3   you are accused of violating in Count 1 carries a minimum term

4   of imprisonment of zero years and a maximum of up to ten years

5   in prison.

6        Count 3 carries a maximum term of imprisonment of 20

7   years and a minimum term of zero years.

8        And finally, Count 4 also carries a minimum term of

9   zero years but a maximum of up to 20 years in prison.  Do you

10  understand that?

11       THE DEFENDANT:  Yes.

12       THE COURT:  Okay.  And there are in effect what are

13  called sentencing guidelines and those guidelines are merely

14  that, a guide to help the Court determine where within the zero

15  to ten and zero to 20 year ranges your sentence should fall.

16  The guidelines are not mandatory but the Court is required to

17  consider the guidelines along with all other relevant factors

18  in determining what an appropriate sentence for you should be.

19  Do you understand that?

20       THE DEFENDANT:  I understand.

21       THE COURT:  Okay.  So does the Government have an

22  estimate of the guideline ranges for these various counts?

23       MR. CAMPOS:  Just a moment, Your Honor.

24            [Pause in proceedings.]

25       THE COURT:  While they're searching for that, I will

17

1  note that in the Plea Agreement it makes it clear that the

2  judge could sentence you consecutively on these three counts.

3  That means you could be required to serve a sentence under

4  Count 1 and then begin your sentence under Count 3, and then

5  finally begin your sentence under Count 4.  You understand

6  that's possible and will be up to the judge?  Do understand

7  that?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Okay.

10             MR. CAMPOS:  Your Honor, the estimate, with grouping

11 and the estimate was that the guideline would be, the bottom of

12 the guideline, would be 327 months would be the bottom of the

13 guidelines.  And consequently that appears in Paragraph 2,

14 Paragraph 3 of the agreement on the waiver.  So that would be

15 the estimate which is based on, for the defendant, the worst

16 case scenario which is the manufacturer suggested retail price

17 of the infringing goods.  The bottom is 327 months.

18             THE COURT:  Okay.  At all note that you've given her

19 credit as long as she pleads guilty today for a one level

20 additional reduction for acceptance of responsibility in

21 addition to the standard reduction.  Is that correct?

22             MR. CAMPOS:  Correct, Your Honor.

23             THE COURT:  Mr. Franz, do you have any quarrel with

24 the Government's estimate of the outside range of the

25 guidelines?

18

1          MR. FRANZ:  I don't quarrel with the estimate as

2    being an outside range.  I don't know that we would come to an

3    agreement on those numbers.  But there's no quarrel that that's

4    the potential calculation that a Court could adopt.

5          THE COURT:  Okay.  So you understand, Ms. Lin, that

6    the Government has estimated that you might at the very least

7    have to serve 327 months.  Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Okay.  But until the judge, Judge Cogan,

10   gets what is called a pre-sentence report which will be

11   prepared by the Probation Department following your plea here,

12   and the judge has an opportunity to hear from you and to hear

13   from Mr. Franz and to hear from the Government's attorney,

14   until that time no one can promise you exactly what your

15   sentence will be; not your attorney, not the Government's

16   attorney, not me, not even Judge Cogan until then.  Do you

17   understand that?

18         THE DEFENDANT:  I understand.

19         THE COURT:  Okay.  And the other thing you should be

20   aware is that between now and the time of sentencing things may

21   happen in your case that will either allow the judge to

22   increase or decrease the amount of the time listed in the

23   guideline range.  Do you understand that as well?

24         THE DEFENDANT:  I understand.

25         THE COURT:  Okay.  Now, you also understand that you

19

1 face the possibility of de-naturalization or deportation as set

2 forth in Paragraph 19 of the Plea Agreement.  You understand

3 that if you plead guilty this may have consequences on your

4 immigration status.  Right now that is being completely handled

5 by a separate proceeding so no one here can promise you what

6 will happen.  Not your attorney, not the Government's attorney,

7 not even this Court with respect to your immigration status.

8 You understand though that that is a potential consequence

9 here?

10             THE DEFENDANT:  Yes.

11             THE COURT:  You also understand that you face the

12 possibility of serving a term of supervised release.  Do you

13 know what supervised release is?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Okay.  Basically, once you've completed

16 any sentence of imprisonment that you're directed to serve, you

17 will be released from jail and until the question of your

18 immigration status is resolved, as long as you remain here in

19 the country there may be restrictions placed your freedom.

20 Reporting to a probation officer on a periodic basis is one

21 such restriction.  Do you understand that?

22             THE DEFENDANT:  I understand.

23             THE COURT:  If you violate any of the conditions of

24 supervised release, you can be sentenced up to two years in

25 prison without getting any credit for the time that you

20

1  previously served on supervised release and without getting

2  credit for the time that you served in prison prior to that.

3  Do you understand that?

4            THE DEFENDANT:  I understand.

5            THE COURT:  The maximum term of supervised release

6  that you face under each of these three counts is three years.

7  Do you understand that?

8            THE DEFENDANT:  I understand.

9            THE COURT:  You also face potential finds.  The

10  maximum fine under Count 1 is $2 million.  The maximum fine

11  under Count 3 is $500,000 or twice the value of the property

12  involved in the transaction, whichever is greater.  Do we have

13  an estimate of what that might be from the Government?

14            MR. CAMPOS:  At this time, Your Honor, I don't think

15  we have an accurate estimate on that.  It may be significantly

16  higher than the $500,000.

17            THE COURT:  Okay.  Is it likely to be higher than the

18  2 million?

19            MR. CAMPOS:  It's unlikely to be higher than the 2

20  million but it is likely to be higher or it could be higher

21  than the 500,000.

22            THE COURT:  Okay.  And in Count 4, again, you face

23  the fine of the greater of $250,000 or twice the gross gain or

24  twice a gross loss which the Government has just indicated

25  might be higher than $500,000.  Do you understand that?

21

                    THE DEFENDANT:  Yes.

                    THE COURT:  Okay.  You also face restitution under

all three counts.  It's mandatory in the full amount of each

victim's losses which I take it the Government doesn't have

that number at this time.

                    MR. CAMPOS:  Not at this time, Your Honor.

                    THE COURT:  That will be determined by the Court.  Do

you understand that?

                    THE DEFENDANT:  Yes.

                    THE COURT:  Okay.  You also must pay a $100.00

special assessment under each of the three counts which is a

total of $300.  Do you understand that?

                    THE DEFENDANT:  I understand.

                    THE COURT:  And finally, you face criminal forfeiture

as set forth in the agreement.  I think it begins on Paragraph

6 where you acknowledge that you own certain property in

Brooklyn and I guess it's like two properties in Brooklyn which

you hold in your name or in the name of the entity and you have

consented to entry of a forfeiture money judgment in the amount

of $1,600,000.  Do you understand that you've agreed to that?

                    THE DEFENDANT:  I understand.

                    THE COURT:  The money judgment shall be paid in full

no later than seven days prior to the date of your sentencing.

Do you understand that?

                    THE DEFENDANT:  I understand.

1    THE COURT:  Okay.  And you have agreed in the Plea

2  Agreement that if you fail to forfeit the properties or fail to

3  pay any portion of the money judgment on or before the due date

4  you have consented to the forfeiture of any other properties

5  that you might have up until the amount that has been unpaid.

6  Do you understand that?

7    THE DEFENDANT:  I understand.

8    THE COURT:  You've agreed that you will not either

9  individually or permit anyone else to waste the property or

10  permit any encumbrances on the forfeited real properties.  Do

11  you understand that?

12    THE DEFENDANT:  I understand.

13    THE COURT:  And you've agreed to assist the

14  Government in effectuating the payment of the forfeiture money

15  judgment by executing any documents they request.  Do you

16  understand that?

17    THE DEFENDANT:  I understand.

18    THE COURT:  Okay.  And you've agreed not to file any

19  claims seeking or contesting the return of this property,

20  right?

21    THE DEFENDANT:  Yes.

22    MR. FRANZ:  Your Honor, if I can just make one point

23  clear on the forfeiture aspect?  There's two properties that

24  are listed that will be attributed towards the forfeiture.

25  There is a provision that says in lieu of.  There's one

23

1  property that's her primary residence that a money judgment

2  will be entered in the balance.  I think it's $631,000 would be

3  credited towards that property.  Just so there's no confusion

4  about her understanding of the terms of the agreement.

5           THE COURT:  Okay.  Is that the Government's

6  understanding as well?

7           MR. CAMPOS:  That's correct, Your Honor.

8           THE COURT:  All right.  Do you understand that, Ms.

9  Lin?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Okay.  And finally, you've given up any

12  right that you might have to notice concerning the forfeiture

13  of these monies or properties, and I guess that's about it.  Is

14  there anything else I should inquire of her?

15          MR. CAMPOS:  That's about it, Your Honor.

16          THE COURT:  Mr. Franz, is there anything else I

17  should ask her?

18          MR. FRANZ:  No, Your Honor, I don't believe so.  Can

19  I have just one moment?

20          THE COURT:  Of course.

21                    [Pause in proceedings.]

22          MR. CAMPOS:  And Your Honor, just one thing.  I think

23  we brought this up but the 327 months that I referenced

24  earlier, that's identified in Paragraph 3 of the agreement and

25  that is the appellate waiver essentially.

24

1          THE COURT:  Right.  I was just going to get to that.

2          MR. CAMPOS:  Okay.

3          THE COURT:  All right.  That's fine.  Thank you.  So

4    the final thing I want to advise you of is that you can appeal

5    your conviction if you believe that your guilty plea is somehow

6    unlawful or involuntary, or there was some other fundamental

7    defect in these proceedings that were not waived by your plea.

8    You also have --

9          THE INTERPRETER:  Say again, Judge?  I didn't hear.

10         THE COURT:  Okay.  Where should I start?  I'll start

11   again.

12         THE INTERPRETER:  Yes.

13         THE COURT:  So you can appeal your conviction if you

14   believe that your guilty plea here was somehow unlawful or

15   involuntary, or if there was some other fundamental defect in

16   this proceeding that was not waived by your plea.  You also

17   have a statutory right to appeal your sentence under certain

18   circumstances if you believe that your sentence was contrary to

19   law.  What the Government's attorney was just referring to is

20   in Paragraph 3 of the agreement.  You've agreed that you will

21   not file an appeal or otherwise challenge your conviction or

22   your sentence so long as the Court imposes a term of

23   imprisonment at or below 327 months.  Do you understand that?

24         THE DEFENDANT:  Yes.

25         THE COURT:  Anything else?

25

1          MR. CAMPOS:  And finally, Your Honor, the agreement

2   is the only agreement that the Government has with the

3   defendant.

4          THE COURT:  Is that a fair statement, Mr. Franz?

5          MR. FRANZ:  Yes, it is.

6          THE COURT:  Do you understand that this is the

7   governing agreement?  There are no other agreements?

8          THE DEFENDANT:  Yes.

9          THE COURT:  All right.  Do you have any questions

10  that you would like to ask me about the charge, or your rights,

11  or the Plea Agreement, or anything else before we proceed?

12         THE DEFENDANT:  No.

13         THE COURT:  Are you ready to plead at this time?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Counsel, do you know of any reason why

16  the defendant should not plead guilty?

17         MR. FRANZ:  No, Your Honor.

18         THE COURT:  Are you aware of any viable legal defense

19  to the charges?

20         MR. FRANZ:  No.

21         THE COURT:  Josstina Lin, what is your plea to Count

22  1 of indictment 18-CR-419; guilty or not guilty?

23         THE DEFENDANT:  Guilty.

24         THE COURT:  Okay.  What is your plea to Count 3;

25  guilty or not guilty?

26

1          THE DEFENDANT:  Guilty.

2          THE COURT:  What is your plea to Count 4; guilty or

3   not guilty?

4          THE DEFENDANT:  Guilty.

5          THE COURT:  Are you making these pleas of guilty

6   voluntarily and of your own free will?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Has anyone threatened or forced you to

9   plead guilty?

10         THE DEFENDANT:  No.

11         THE COURT:  Has anyone made any promise to you as to

12  what your sentence will be?

13         THE DEFENDANT:  No.

14         THE COURT:  I read the charges to you a few minutes

15  ago.  I want you to tell me in your own words starting with

16  Count 1 exactly what it is that you did between April 2011 and

17  December 2016 in connection with this agreement to traffic in

18  counterfeit goods.

19         THE DEFENDANT:  Yes.  The first count for the

20  conspiracy to traffic in counterfeit goods between April 2011

21  and December 2016 I worked with other people to distribute and

22  sell fake luxury handbags, wallets, and other merchandise that

23  were imported from China.  These fake goods had counterfeit

24  trademarks and I knew that the fake goods that I was importing

25  and selling had counterfeit trademarks.  The counterfeit

 1  trademarks were copies of trademarks or brands like Louis

 2  Vuitton.  In this regard, you know, about June 2012, in the

 3  Eastern District of New York I directed the unloading of fake

 4  luxury goods from a shipping container.  I worked with my

 5  associates to sell these fake goods to customers in the New

 6  York area and elsewhere.

 7          Count 3, money laundering conspiracy --

 8          THE COURT:  Okay.  So let me stop you here for a

 9  minute.  Let me ask if the Government has anything else that I

10  should inquire of with respect to Count 1.

11          MR. CAMPOS:  With respect to Count 1, Your Honor the

12  Government has no further questions of the defendant.

13          THE COURT:  All right.  So tell me about the money

14  laundering conspiracy which is Count 3.

15          THE DEFENDANT:  I made money from selling and

16  importing fake luxury goods from about February 2012 to June

17  2015 in the Eastern District of New York and elsewhere.  I

18  agreed with others to engage in financial transactions by

19  interstate transfers of money using money orders.  And the

20  money from these transactions was the proceeds of trafficking

21  in counterfeit goods.  The transactions were designed to in

22  part to conceal the true origin of the proceeds and I knew that

23  was the case.  Customers basically paid for the fake goods with

24  money orders.  Sometimes the money orders were sent from out

25  of\ state to New York State via the mail and often the true

1  names of the payee and the payor were not put on these money

2  orders.  This was done in order to hide the origin of the money

3  and it was done also to hide the true identities of the people

4  who were involved in the distribution and sale of the fake

5  luxury goods.  And I would sometimes deposit these money orders

6  into my bank accounts in Brooklyn and Queens or New York.

7        THE COURT:  Okay.  Does the Government have anything

8  else with respect to that count?

9        MR. CAMPOS:  No, Your Honor.

10        THE COURT:  All right.  So finally Count 4 involves a

11  specific act on August 31, 2013.  Can you tell me what you did

12  in connection with that charge?

13        THE DEFENDANT:  On or about August 31, 2013 I, along

14  with others, smuggled and introduced into the United States

15  fake Louis Vuitton handbags.  I was aware that the false and

16  fraudulent documents including the invoices were used to have

17  the goods pass through Customs and I knew that the fake Louis

18  Vuitton bags had counterfeit trademarks on them.  And all of

19  this conduct happened in the Eastern District of New York.  And

20  at the time I knew what I was doing was wrong.

21        THE COURT:  Counsel, anything else on that charge?

22        MR. CAMPOS:  No, Your Honor.

23        THE COURT:  All right.  Mr. Franz, anything you want

24  to ask?

25        MR. FRANZ:  I have nothing, Your Honor.

29

```
1           THE COURT:  Based on the information given to me, I
2   find that the defendant is acting voluntarily, fully
3   understands her rights and the consequences of her plea, and
4   that there is a factual basis for the plea.  I will therefore
5   recommend to Judge Cogan that he accept your plea of guilty to
6   Counts 1, 3, and 4 of the indictment.
7           The sentencing date has been tentatively set for
8   December 12th at 10 a.m.  What that means, Ms. Lin, is that
9   someone from the Probation Department is going to meet with you
10  to prepare the pre-sentence report.  I urge you to cooperate
11  with them obviously with your attorney's advice.  If that
12  December 12th date becomes impractical or impossible for
13  someone, I would just urge you to get in touch with Judge
14  Cogan's case manager.  Okay?
15          MR. FRANZ:  Yes, Your Honor.
16          THE COURT:  Anything else?
17          MR. FRANZ:  No.  Thank you, Your Honor.
18          MR. CAMPOS:  Not from the Government.
19          THE COURT:  All right.  Thank you very much.
20  (Proceedings concluded at 4:22 p.m.)
21                      *  *  *  *  *  *
22
23
24
25
```

30

1      I certify that the foregoing is a court transcript from an

2  electronic sound recording of the proceedings in the above-

3  entitled matter.

4

5                                    *Mary Greco*

6                                      Mary Greco

7  Dated:  October 1, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25